## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 11-61357 SCOLA

STEPHEN M. MANNO et al.,

      Plaintiffs,

vs.

HEALTHCARE REVENUE
RECOVERY GROUP, LLC, et al.,

      Defendants.

_____/

### ORDER ON MOTION FOR CLASS CERTIFICATION

THIS MATTER is before the Court on the Motion for Class Certification [ECF No. 53], filed by Plaintiff Stephen Manno.  For the reasons explained below, the Court finds that class certification is appropriate.

### Introduction

Plaintiff Stephen Manno brought this putative class action against Defendant Healthcare Revenue Recovery Group, LLC ("HRRG") for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e(11) and 1692d(6).  He has also sued Defendant Inphynet South Broward, Inc. ("Inphynet") for alleged violations of the TCPA.

Manno, the proposed class representative, received medical treatment in the emergency room at Memorial Hospital Pembroke ("Memorial").  While at Memorial, Manno was treated by the hospital's agent, an attending physician of Inphynet.  During the admissions process, Manno filled out paperwork and provided a cellular telephone number to the hospital.  Manno claims that he did not expressly consent to use of the telephone number for debt collection purposes.  Medical services obtained from Inphynet are billed through a billing company, Health Care Financial Services ("HCFS") and are referred to HRRG for collection if the bill is not paid.  All of the debts that HRRG collects for Inphynet are medical debts.  Manno did not pay for the services he received at Memorial, the debt went into default, and was referred to HRRG for collection.

HRRG, in an effort to collect the hospital debt owed to Inphynet, called Manno using the telephone number he provided during the emergency room admissions process. The telephone number was in the name of his girlfriend, now wife, Shantal Surprenant. The AT&T bills for the alleged calls at issue are in Manno's wife's name and the bills were sent to her. Manno maintains that he and his wife shared a family telephone plan and the cell number was his. On June 17, 2010, HRRG, on behalf of Inphynet, allegedly left the following prerecorded voicemail message for Manno in which it failed to identify itself as a debt collector: "This is HRRG calling. We look forward to helping you. Please return our call at 1-800-984-9115. Thank you." This was allegedly the standard message HRRG was using in June of 2010 to contact consumers.

Plaintiff moves for class certification under the FDCPA and TCPA. The proposed FDCPA class definition is:[1]

All Florida residents for whom HRRG left a telephone message:

(a)      in substantially the following form:
         [Hello] this is HRRG calling. We look forward to helping you.
         Please return our call at 1-800-984-9115. Thank you.

(b)      in which it failed to disclose that the communication was from a debt collector;

(c)      in an attempt to collect a debt, which was owed to Inphynet, arising from medical care at a Memorial Healthcare System facility, including Memorial Regional Hospital, Memorial Regional Hospital South, Joe DiMaggio Children's Hospital, Memorial Hospital West, Memorial Hospital Miramar and/or Memorial Hospital Pembroke;

(d)      during the one year period prior to the filing of the complaint in this matter through the date of class certification.

The proposed TCPA class definition is:

All Florida residents to whom HRRG, on behalf of Inphynet, placed any call:

(a)      using an automatic telephone dialing system or an artificial or prerecorded voice to the recipient's cellular telephone;

(b)      where Defendants' records show the person's cellular telephone number was obtained from Inphynet;

(c)      to collect or attempt to collect a debt allegedly due Inphynet arising from medical care at a Memorial Healthcare System facility, including Memorial Regional Hospital, Memorial Regional Hospital South, Joe

---

[1] Where necessary, the Court has made certain cosmetic adjustments to the syntax and presentation of the proposed class definitions, but has not altered the substance in any way.

> DiMaggio Children's Hospital, Memorial Hospital West, Memorial Hospital Miramar and/or Memorial Hospital Pembroke;
>
> (d)      during the four year period prior to the filing of the complaint through the date of class certification;
>
> Excluded from this class are persons who HRRG's records show gave express consent directly to HRRG to call their cellular telephone number prior to HRRG's placement of its call using an automatic telephone dialing system or a prerecorded voice message.

HRRG and Inphynet (collectively, "Defendants") argue that class certification should be denied for several reasons.  Initially, they contend that Manno lacks standing to sue under the TCPA and the FDCPA.  In addition, Defendants argue that the class is not sufficiently numerous to warrant certification, that commonality is lacking among the class members' claims, that Manno's claims are atypical of other class members' claims, that Manno and his counsel would inadequately represent the class, that individual issues predominate over any questions common to the class, and that the class action device would be an inferior method of adjudicating this dispute.  Manno, of course, disagrees and argues that each of the requirements for class certification are met.

### Legal Standard

Federal Rule of Civil Procedure 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003).  In view of the "awesome power of a district court" in controlling the class action mechanism, any decision to certify a class must rest on a "rigorous analysis" of the requirements of Rule 23.  *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010) (citation omitted); *see also Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982).  While the district court's class certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 2013 WL 691001, at *7 (U.S. Feb. 27, 2013) (citations omitted).  Rather, "[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *See id.*

"The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co.*, 350 F.3d at 1187.  "Under Rule 23(a), every putative class first must satisfy the prerequisites of 'numerosity, commonality, typicality, and adequacy of representation.'" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).  Rule 23(a) is satisfied only where:

> (1)   the class is so numerous that joinder of all members is impracticable;
>
> (2)   there are questions of law or fact common to the class;
>
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)   the representative parties will fairly and adequately protect the interests of the class

Fed. R. Civ. P. 23(a).

Where certification is sought under Rule 23(b)(3), as it is here, the plaintiff must show, in addition to the four requirements of Rule 23(a), that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See* Fed. R. Civ. P. 23(b)(3); *Vega*, 564 F.3d at 1265.

## Legal Analysis

### I.    Standing

Whether the named plaintiff has standing to sue is a threshold question in any class action case; thus, "any analysis of class certification must begin with the issue of standing."  *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir.1987); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000).  Defendants argue that Manno lacks both constitutional and statutory standing under the TCPA.  These standing challenges are addressed, and rejected, in turn below.

#### A.  *Article III Standing*

If the plaintiff does not have constitutional standing, the district court is powerless to entertain the suit.  *See Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264-65 (11th Cir. 2011); *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "The Supreme Court has explained that the 'irreducible constitutional minimum' of standing under

Article III consists of three elements: an actual or imminent injury, causation, and redressability." *Hollywood Mobile Estates*, 641 F.3d at 1265 (citing *Lujan*, 504 U.S. at 560-61).

Defendants argue that Manno lacks standing under Article III because he has not alleged any injury, or damages, as a result of their conduct. "The fact that the FDCPA and TCPA authorizes [sic] awards of 'statutory damages' independent of whether a plaintiff has claimed actual injury does not suspend the constitutional standing requirement, and therefore, Plaintiff has no standing," they argue.

Defendants are mistaken. As this Court has explained before, a plaintiff suffers an injury under Article III whenever there is a violation of a legally protected interest, and the requisite injury "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *See Thorne v. Accounts Receivable Mngmt., Inc.*, 2012 WL 3108662, at *6 (S.D. Fla. July 24, 2012) (Scola, J.) (quoting *Lujan*, 504 U.S. at 578). "The requirement of an injury-in-fact does not 'suggest that Congress cannot define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant.'" *Thorne*, 2012 WL 3108662, at *6 (citation omitted). The FDCPA and TCPA are consumer protection statutes that confer on plaintiffs the right to be free from certain harassing and privacy-invading conduct. In furtherance of such interests, the statutes authorize an award of damages whenever a violation occurs. Manno has alleged Defendants' conduct violated both statutes, and that is enough to confer upon him standing under Article III. *See Thorne*, 2012     WL 3108662, at *6; *see also Jordan v. ER Solutions, Inc.*, 2012 WL 5245384, at *2 (S.D. Fla. Oct. 18, 2012) (Dimitrouleas, J.); *Smith v. Microsoft Corp.*, 2012 WL 2975712, at *6 (S.D. Cal. July 20, 2012); *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *2-*4 (N.D. Ill. Aug. 10, 2012); *Abernathy v. NCC Bus. Servs., Inc.*, 2012 WL 4320810, at *3 (N.D. Miss. Sept. 18, 2012).

### B. Statutory Standing

"Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) (emphasis original); *see also Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012). Defendants argue

that Manno does not have standing to sue under the TCPA as a "called party,"[2] or telephone subscriber, because the cellular number in question is registered in the name of his wife.

This Court disagrees.  As persuasively explained in *Page v. Regions Bank*, 2012 WL 6913593, at *2 (N.D. Ala. Aug. 22, 2012), the standing provision of the TCPA is quite broad in that any "person or entity" injured by a violation of the statute may seek redress; standing is not expressly limited to the "called party."  Several other district courts have endorsed this view. *See, e.g.*, *Swope v. Credit Mngmt., LP*, 2013 WL 607830, at *2 (E.D. Mo. Feb. 19, 2013) (rejecting defendant's argument that only a "called party" has standing to raise a TCPA claim because "[b]y its plain language, the TCPA grants standing to any 'person or entity'"); *Tang v. William W. Siegel & Assocs, Attorneys at Law, LLC*, 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011); *Kane v. Nat'l Action Fin. Servs., Inc.*, 2011 WL 6018403, at *7 (E.D. Mich. Nov. 7, 2011).

Defendants do not dispute that Manno was the regular carrier and user of the cell phone in question, and they do not deny that he was the intended recipient of their calls.  Instead, Defendants contend that Manno wasn't the "called party" because the phone was registered in his wife's name.  This type of argument has been rejected before.  "Numerous courts that have considered this issue have held a party to be a 'called party' if the defendant intended to call the individual's number, and that individual was the regular user and carrier of the phone."  *Swope*, 2013 WL 607830, at *3; *see also Page*, 2012 WL 6913593, at *4-*5.  In *Page*, for example, the district court held that the plaintiff qualified as a "called party" because he was "the regular user and carrier of the cellular telephone, as well as the person who need[ed] the telephone line to receive other calls," and "[t]he fact that the telephone number was registered to [his] fiancee's name does not change this result."  *See id.* at *5.  Similarly, in *Agne v. Papa John's International, Inc.*, 286 F.R.D. 559, 565 (W.D. Wash. 2012), the district court found that the plaintiff had standing to sue under the TCPA even though she was merely "an authorized user of her shared cellular plan" and "her ex-husband was the primary account holder."  In rejecting the argument that the plaintiff lacked standing to sue under the TCPA because "she was not the primary account owner on her shared cellular plan and did not pay the bill," the district court

---

[2] As relevant here, the TCPA makes it unlawful for any party to make a non-emergency call using an automatic telephone dialing system or artificial prerecorded voice message:

> to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, **or any service for which the called party is charged for the call**[.]

*See* 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis supplied).

noted that the plaintiff was the exclusive user of her cell phone and was the intended recipient of the defendant's communications.  *See id.*  The thrust of these decisions and others is that a plaintiff's status as the "called party" depends not on such technicalities as whether he or she is the account holder or the person in whose name the phone is registered, but on whether the plaintiff is the regular user of the phone and whether the defendant was trying to reach him or her by calling that phone.  Manno qualifies as the "called party" under this interpretation.

Defendants' next contention is that Manno lacks standing because his wife paid the cell phone bills, meaning that he was not "charged for the call[s]," as purportedly required by section 227(b)(1)(A)(iii).  This argument also fails.  As a factual matter, it is simply not true that Manno wasn't "charged for" his cellular telephone calls.  He stated in deposition that his wife paid the cell phone bill, but he also made clear that payment came out of their joint checking account. *See* Manno Dep. at 59-61 [ECF No. 78-1].  Moreover, the TCPA does not require the plaintiff to be "charged for" the calls in order to have standing to sue:

> The relevant statutory language provides that it is unlawful for any person to make certain calls "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]" 47 U.S.C. § 227(b)(1)(A)(iii). Defendant argues the last phrase of this section modifies all the previous phrases, and therefore imposes a requirement that the party be charged for the call. Plaintiffs respond that this interpretation violates the doctrines of last antecedent and interpreting disjunctives. . . .  Following this doctrine, the phrase "for which the called party is charged for the call" modifies only "any service," not the preceding sections of the statute.

*Gutierrez v. Barclays Group*, 2011 WL 579238, at *5 (S.D. Cal. 2011 Feb. 9, 2011).

The Court finds this interpretation persuasive and correct.  Aside from the canons of statutory construction supporting this reading, a contrary interpretation would make no sense in light of the provision of the Act, section 227(b)(2)(C), authorizing the FCC to exempt "calls to a telephone number assigned to a cellular telephone service that are not charged to the called party."  *See Page*, 2012 WL 6913593, at *6; *Gutierrez*, 2011 WL 579238, at *5.  "If [section] 227(b)(1)(A)(iii) did not include 'calls to a telephone number assigned to a cellular telephone service that are ***not*** charged to the called party,' the exemption would be meaningless."  *Page*, 2012 WL 6913593, at *6 (emphasis supplied).  Thus, Manno need not be "charged for the call" in order to have standing to complain.  *See Gutierrez*, 2011 WL 579238, at *5; *Page*, 2012 WL 6913593, at *6; *Agne*, 286 F.R.D. at 565; *Kane*, 2011 WL 6018403, at *8; *see also Buslepp v. Improv Miami, Inc.*, 2012 WL 1560408, at *2 (S.D. Fla. May 4, 2012) (Cohn, J.).

## II.      Class Certification

"Prior to certifying a class action, district courts must conduct a 'rigorous analysis' of whether a putative class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure." *City of St. Petersburg v. Total Containment*, 265 F.R.D. 630, 634 (S.D. Fla. 2010) (Lenard, J.).   Accordingly, the Court carefully considers below the arguments for and against class certification.

### A.  *Rule 23(a) Requirements*

In order to obtain class certification, Manno must first establish that the four prerequisites under Rule 23(a) – numerosity, commonality, typicality, and adequacy – are satisfied.

#### *1.  Numerosity*

To establish numerosity, Manno must show that "the class is so numerous that joinder of all members is impracticable." *See Vega*, 564 F.3d at 1266-67 (quoting Fed. R. Civ. P. 23(a)(1)). While "mere allegations of numerosity are insufficient," Rule 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." *See Vega*, 564 F.3d at 1267 (citations omitted). "Nevertheless, a plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *See id.* (emphasis original). Although mere numbers are not dispositive, the general rule of thumb in the Eleventh Circuit is that "less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *Kuehn v. Cadle Co.*, 245 F.R.D. 545, 548 (M.D. Fla. 2007).   The Court may also consider factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits." *See Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004) (Dimitrouleas, J.); *Kuehn*, 245 F.R.D. at 548.

Defendants contend that Manno has not submitted evidence showing that enough individuals fit the putative class definitions.   As to the FDCPA class, they argue that Manno has not shown there is a sufficiently numerous group of consumers who "received alleged calls with deficient messages related to care rendered by Inphynet for patients who were attended to at Memorial Healthcare System hospitals." *See* Resp. at 9.   As to the TCPA class, Defendants

argue that Manno has not shown "that there are at least 40 identifiable persons who are Florida residents that were subscribers of cellular telephone numbers called without their consent." *See id.* at 10.

After Defendants filed their opposition memorandum, a protracted discovery dispute ensued before the Magistrate Judge, culminating in her order requiring HRRG to reappear at deposition to testify regarding numerosity.  Manno sought, and obtained, several extensions of time to wait and file his reply after that discovery was complete.  As set forth in Manno's reply, the discovery revealed evidence sufficient to satisfy the numerosity requirement for both classes. Indeed, the discovery revealed that more than 8,000 Florida residents meet the proposed FDCPA class definition and more than 5,000 satisfy the TCPA class definition.[3]  These numbers are sufficiently large for the Court to presume joinder would be impracticable.

### 2. Commonality

"The commonality requirement demands only that there be 'questions of law or fact common to the class.'"  *See Vega*, 564 F.3d at 1268 (quoting Fed. R. Civ. P. 23(a)(2)).  Not all questions of law and fact need be common, but as the Supreme Court recently clarified, this requirement is not met merely because the putative class members allegedly "all suffered a violation of the same provision of law."  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Indeed, it is not just the presence of common questions that matters, but the ability of the class action device to "resolve an issue that is central to the validity of each one of the claims in one stroke."  *See id.*  To this end, the Supreme Court explained:

> What matters to class certification is not the raising of common "questions" –
> even in droves – but, rather the capacity of a classwide proceeding to generate

---

[3] As to the TCPA class, the discovery identified more than 9,000 accounts meeting the class definition, within the parameters set by the Magistrate Judge.  Because the TCPA prohibits calls to cellular and not residential lines, Manno enlisted an expert to perform a so-called "cell phone scrub," an exercise that segregates mobile numbers from landlines.  Manno's expert concluded that more than 5,000 numbers were cell phone lines.  Defendants moved before the Magistrate Judge to strike and exclude the expert's analysis as untimely and prejudicial, but the Magistrate Judge denied that motion.  Instead, she ruled that Defendants could promptly seek to file a surreply addressing the expert's analysis and its impact on numerosity in the context of class certification.  Defendants never did so, however.  Mindful that numerosity poses a "generally low hurdle," *see Vega*, 564 F.3d at 1267, and can be satisfied with as few as 40 members, *see Cox*, 784 F.2d at 1553, the Court finds the expert's analysis sufficient to establish numerosity.  *Cf. Hicks v. Client Servs., Inc.*, 2008 WL 5479111, at *4 (S.D. Fla. Dec. 11, 2008) (Dimitrouleas, J.) (even assuming that only a fraction of total calls met class parameters, class size would be larger than 50 and sufficient to establish numerosity).

> common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009) (internal alterations omitted)).

As to the proposed FDCPA class, commonality is satisfied here. The key question is whether HRRG violated the FDCPA by leaving a voice message for putative class members, during the class period, without disclosing that the communication was from a debt collector. This overriding common question, which is subject to common resolution, is enough to establish commonality. *See Hicks v. Client Servs., Inc.*, 2008 WL 5479111, at *7 (S.D. Fla. Dec. 11, 2008) (Dimitrouleas, J.) ("The single issue of whether class members received phone messages that lacked information required by the FDCPA is common to the class members and predominates over any individual issue."). Defendants incorrectly contend that the Court will have to delve into whether each putative class member did, or did not, have prior contact with HRRG and whether each class member did, or did not, have prior knowledge that HRRG was a debt collector. This argument ignores that prior knowledge is not relevant, because the statute requires a debt collector to identify itself on every call and whether it did so or not is decided by reference to an objective inquiry – whether the "least sophisticated consumer" would know. *See Hepsen v. Resurgent Cap. Servs., LP*, 383 F. App'x 877, 881 (11th Cir. 2010) ("We use a 'least-sophisticated consumer' standard to consider whether a debt collector's communication violates § 1692e, presuming that the 'least-sophisticated consumer' possesses a rudimentary amount of information about the world and a willingness to [consider the communication] with some care."); *see also Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1174-75 (11th Cir. 1985). Thus, whether Manno or other class members were actually misled, or were subjectively unaware that HRRG was a debt collector, is not an individualized issue defeating commonality. *See Bummolo v. Law Offices of Charles W. McKinnon, P.L.*, 2012 WL 3866485, at *3 (S.D. Fla. Sept. 5, 2012) (Moore, J.).

Defendant's remaining argument – that Manno does not have a viable claim under section 1692d(6) because he alleges only one violative call within the limitations period – is both wrong and irrelevant to commonality. Manno is not seeking class certification under 1692d(6); he is seeking certification under section 1692e(11), which imposes liability whenever a debt

collector fails to identify itself.[4]  *See Drossin v. Nat'l Action Fin.l Servs., Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (Dimitrouleas, J.) ("[E]ven in subsequent communications, the Act requires that the debt collector must disclose itself as such. 15 U.S.C. § 1692e(11). Therefore, the issue of whether class members received phone messages that lacked information required by the FDCPA is common to the class members[.]").  Moreover, even if meritorious, Defendants' argument would bear more on typicality and/or adequacy than on commonality.

Turning to the proposed TCPA class, the Court also finds commonality satisfied.  The TCPA prohibits automated calls to cellular phones without the prior express consent of the party being called.  *See* 47 U.S.C. § 227(b)(1)(A).  Thus, consent is a defense to a TCPA claim.  *See Manfred v. Bennett Law, PLLC*, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012) (Seitz, J.) ("prior express consent is an affirmative defense" under TCPA). Defendants argue that commonality is defeated by the consent issue because whether each putative class member provided express prior consent is a question that can be resolved only by individualized inquiry. While other district courts have denied certification under the TCPA on these grounds, *see, e.g.*, *Hicks*, 2008 WL 5479111, at *4, this case is different.

Here, the Magistrate Judge required the Defendants to conduct class discovery on numerosity and to specifically identify only those accounts where HRRG's records showed that the called party did not communicate in any way with HRRG prior to HRRG's automated call.[5] Obviously, if the putative class members did not communicate with HRRG before HRRG called them, there is no way those class members could have provided consent to HRRG.  Thus, the way in which the discovery was performed weeded out the individuals who had previously contacted HRRG and, thus, weeded out those individuals who may have consented to be called. As such, the Court will not have to inquire as to whether each putative class member may be subject to an independent consent defense.  This serves to distinguish those cases where judges have denied certification on the ground that the issue of consent defeats commonality.

---

[4] Defendants' reliance on this Court's decision in *Thorne v. Accounts Receivable Mngmt., Inc.*, 2012 WL 3090039 (S.D. Fla. June 28, 2012) (Scola, J.), is misplaced because that case concerned an attempt to certify under section 1692d(6), which is not at issue here.

[5] Even Defendants do not dispute that more than 9,000 accounts (prior to the cell phone scrub) were identified "where there was no communication from the patient to HRRG before an outbound call was attempted."  *See* Defendants' Discovery Letter [ECF No. 120] at 1.

Although Defendants also contend that the mere act of tendering a phone number to an admissions clerk at the time of medical care constitutes consent *per se*, this argument, whatever its validity, does not defeat commonality. To the contrary, the argument is itself subject to common resolution. Whether the provision of a phone number on admissions paperwork equates to express consent is a question common to all class members, because all class members filled out paperwork at the time of treatment. On this defense, all class members will prevail or lose together, making this another common issue to the class. *Cf. Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 74 (3d Cir. 2011) (recognizing that "the consent question could be understood as a common question"); *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008) (same).

### 3.   Typicality

As the name suggests, typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004) (citation omitted). Yet, the "[c]lass members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278-79 (11th Cir. 2000) (internal alterations omitted)). The required nexus exists "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *See Ault*, 692 F.3d at 1216 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). "Thus, typicality is often met when, in proving her case, the representative plaintiff establishes the elements needed to prove the class members' case." *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 677 (S.D. Fla. 2007) (Seitz, J.). While commonality and typicality are related, the Eleventh Circuit has "distinguished the two concepts by noting that, '[t]raditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class.'" *See Vega*, 546 F.3d at 1274 (quoting *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001)).

The Court finds that Manno's claims are typical of the proposed FDCPA class. Defendants' sole argument is that Manno's claims are atypical because he only alleges one violative message within the limitations period, even though section 1692d(6) requires a showing of more than one call within that period.  As explained above, however, Manno is moving to certify under section 1692e(11), not section 1692e(6).  Section 1692e(11) requires disclosure, each and every time, that the call is from a debt collector; it does not require multiple calls within the limitations period.  *See Drossin*, 255 F.R.D. at 616.  The proposed FDCPA class includes those Florida residents whom HRRG called in regards to a debt due to Inphynet, arising from care received at a Memorial Healthcare System facility, in which HRRG failed to disclose that it was a debt collector.  Manno's claims are typical because he alleges that HRRG called him in regards to his own medical debt arising from care at such a facility and failed to disclose the call was from debt collector.  To prove his own case, Manno will have to set forth proof that such calls, which affected all class members, violated the FDCPA.  *See Singleton v. Gen. Revenue Corp.*, 2013 WL 151181, at *2 (S.D. Fla. Jan. 14, 2013) (McAliley, J.). The exact script of the calls or messages received need not be the same between Manno and the putative class members; what matters is the lack of disclosure.  *See Hicks*, 2008 WL 5479111, at *7-*8.  "Therefore, the issue of whether class members received phone messages that lacked information required by the FDCPA is common to the class members and [Manno's] claims are typical."  *See Drossin*, 255 F.R.D. at 616.

The Court also finds that Manno's claims are typical of the TCPA class.  Defendants argue otherwise, again invoking the issue of consent, which they continue to insist will require individualized inquiries and a series of mini-trials to resolve:  "The lack of express consent cannot be shown without the trial degenerating into mini-trials on the consent of every class member," they contend.  *See* Resp. at 19.  According to Defendants, Manno's claims are not typical of the class because some class members may have provided consent to be called, whereas he allegedly did not, and such determination will require a case-by-case individualized inquiry.  Once again, this argument is mistaken.

As explained above, the issue of consent does not, in this case, present an individualized issue destroying the cohesiveness of the class.  As explained by the Fifth Circuit in *Gene & Gene, LLC v. BioPay, LLC*, 541 F.3d 318, 327-28 (5th Cir. 2008) (*Gene & Gene I*), the issue of consent under the TCPA may, or may not, be individualized and it may, or may not, defeat

certification, depending on the facts of the particular case.  As that court explained, violations of the TCPA "are not *per se* unsuitable for class resolution," and "there are no invariable rules regarding the suitability of a particular case . . . for class treatment; the unique facts of each case generally will determine whether certification is proper."[6]  *See id.* at 328.

Here, the individuals identified as putative class members during discovery on the numerosity issue did not have any communications with HRRG prior to the alleged offending calls.  Therefore, they could not have expressly consented to be called.  While Defendants again argue that consent was given when class members provided their phone numbers during the admissions process, this issue/defense is common to Manno and all putative class members.  All went through the same or similar admissions process, during which they provided their phone numbers.  Thus, Manno and the class will prevail or lose together both on their claims and on Defendants' affirmative defense of consent.  *See Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647-48 (W.D. Wash. 2007); *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 WL 444619, at *2-*3 (S.D. Cal. Feb. 5, 2013).

### 4.  Adequacy

To satisfy the adequacy requirement, the named plaintiff and his counsel must demonstrate that they will adequately protect the interests of the putative class.  *See Valley Drug Co.*, 350 F.3d at 1187.  "The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between [Manno or his lawyers]

---

[6] After the Fifth Circuit reversed and remanded in *Gene & Gene I*, the district court allowed additional class discovery and then re-certified the class under the TCPA.  A second appeal followed and the Fifth Circuit reversed again, finding the prior panel's decision, as law of the case, precluded the district court from re-certifying.  *See Gene & Gene, LLC v. BioPay, LLC*, 624 F.3d 698 (5th Cir. 2010) (*Gene & Gene II*).  Defendants cite to, and characterize, *Gene & Gene II* as "reversing the recertification of the class after a first appeal determined that consent could not be established by class-wide proof and [that] certification was not appropriate[.]"  *See* Resp. at 18.  Although Defendants' characterization of the Fifth Circuit's holding is correct as far as it goes, it is also somewhat misleading.

As noted above, the panel in *Gene & Gene I* did not hold that the issue of consent would always bar certification in TCPA cases.  *See Gene & Gene I*, 541 F.3d at 328.  Indeed, the first panel emphasized that the appropriateness of class treatment will depend on the particular facts of the case.  *See id.*  The case at bar proves the point.  Whereas in *Gene & Gene*, the plaintiffs did not have any means to resolve the issue of consent on a classwide basis or to identify and exclude the putative class members who had given consent, Manno has done so here.  In the course of numerosity discovery, Defendants identified only individuals who did not communicate with HRRG prior to being called; hence, no prior express consent.  Defendants' other consent argument centers on what occurred in uniform fashion during every putative class member's admission process and is subject to resolution on a classwide basis.  *See Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647-48 (W.D. Wash. 2007).

and the class; and (2) whether [he and his lawyers] will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

The Court finds that Manno and his counsel will adequately represent both putative classes in this case. Manno and the class members seek to hold Defendants liable for calling and leaving telephone messages in violation of the FDCPA and TCPA. The claims and defenses applicable to Manno and the classes appear to be substantially the same, if not identical, and there is no antagonism between Manno's interests and those of the putative class members. Moreover, Manno has stated that he understands his responsibilities and duties as a class representative. *See* Manno Aff. [ECF No. 57]. As for class counsel, the Court has considered their qualifications and experience and finds them sufficiently adept and able to handle this class action litigation. *See* Yarbrough Aff. [ECF No. 55]; Bragg Aff. [ECF No. 56]. Attorney Yarbrough has previously litigated other consumer class action cases, and has also handled many individual actions under the FDCPA. *See* Yarbrough Aff. Attorney Bragg is well versed in consumer advocacy law and is otherwise an experienced litigator. *See* Bragg Aff.

Defendants sole argument against adequacy is that "the plaintiff and his lawyer waited for two years to bring the claim," which was "to the detriment of the putative class members" because "some of the persons lost alleged viable claims." *See* Resp. at 21. This, according to Defendants, shows that Manno and his counsel "put their own interests ahead of those they seek to represent." *See id.* Defendants have not presented any evidence that persons otherwise within the class definition lost claims to the statute of limitations because of Manno's purported delay in bringing suit. *Cf. Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1348-49 (11th Cir. 2001) (named plaintiff was inadequate class representative because his claim was time-barred). Absent such evidence, this Court cannot conclude that Manno, or his counsel, are inadequate representatives solely because of when they decided to bring suit. *See Whitten v. ARS Nat'l Servs., Inc.*, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001) (adequacy requirement satisfied where "there [was] no evidence that any alleged delay in filing the class action prejudiced potential class members due to the statute of limitations"). Manno's duty is to the class he seeks to represent, not some other class he might have attempted to represent.

### B. Rule 23(b) Requirements

"In addition to establishing the Rule 23(a) requirements, a plaintiff must also establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b)." *Little*

*v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012); *see also Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000).   In this case, Manno moves under Rule 23(b)(3), which "permits class certification if 'the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy.'"   *Little*, 691 F.3d at 1304 (quoting Fed. R. Civ. P. 23(b)(3) (emphasis original)).   These are commonly referred to as the predominance and superiority requirements.   *See Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 496 (N.D. Ga. 2006).

### 1.  Predominance

To satisfy the predominance requirement, the named plaintiff must establish that the issues subject to generalized proof in the class action, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof.  *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).  Thus, predominance requires not just the presence of common issues, but also that those common issues actually outweigh any individualized issues in the litigation.  In this way, predominance is "far more demanding" than Rule 23(a)'s commonality requirement.  *See Jackson*, 130 F.3d at 1005 (citation omitted).  "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

As to the FDCPA class, the Court finds that common issues predominate.  In order to establish a FDCPA violation under section 1692e(11), the plaintiffs will have to show: (1) the defendants failed to disclose in their initial written or oral communications that they were debt collectors attempting to collect a debt and that any information obtained would be used for debt collection purposes; and/or (2) the defendants failed to disclose in any subsequent communications that the communications were from a debt collector.  *See* 15 U.S.C. § 1692e(11); *see also Seaman v. McGuigan*, 2013 WL 806610, at *2 (M.D. Fla. Feb. 11, 2013). Manno's claims, and those of the putative class, are based on calls received from HRRG in which it attempted to collect a medical debt due to Inphynet.  In those calls, HRRG allegedly failed to identify itself as a debt collector in violation of section 1692e(11).  Determining whether Defendants are liable is subject to generalized proof and will not be overshadowed by individualized determinations.

As already noted, the Eleventh Circuit evaluates FDCPA claims under the "least sophisticated consumer" standard, which is an objective inquiry. *See Ponce v. BCA Fin. Servs., Inc.*, 467 F. App'x 806, 808 (11th Cir. 2012); *see also Jeter*, 760 F.2d at 1175. Moreover, the Court will not have to engage in individualized inquiries about potential variations in the content of the calls because the class, by definition, is limited to individuals who received a telephone message in substantially the following form: "This is HRRG calling. We look forward to helping you. Please return our call at 1-800-984-9115. Thank you." *See* Mot. at 2. During numerosity discovery, Defendants identified more than 8,000 individuals meeting the class definition who received such calls. That the exact call scripts may have varied somewhat from person to person is irrelevant and does not defeat predominance. "The single issue of whether class members received phone messages that lacked information required by the FDCPA is common to the class members and predominates over any individual issue. The exact script of the messages need not be common to the class members, since it is the *lack* of information that is relevant." *Hicks*, 2008 WL 5479111, at *7 (emphasis original).

The Court also finds the predominance requirement satisfied for the TCPA class. To prove a TCPA violation under section 227(b)(1)(A)(iii), the plaintiffs will have to show: (1) the defendants called their cell phones; (2) without plaintiffs' prior express consent; (3) using an "automatic telephone dialing system or an artificial or prerecorded voice." *See* 47 U.S.C. § 227(b)(1)(A)(iii); *see also Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012) (Scola, J.). Common questions of law and fact predominate here because, as explained above, any persons who may have been subject to an individualized consent defense were excluded during numerosity discovery. Pursuant to the Magistrate Judge's directives, HRRG excluded those individuals who had ***any communications*** with HRRG prior to being called. Thus, contrary to Defendants' argument, the issue of consent does not predominate over the questions common to the class. Further, as explained above, the Defendants' other consent argument – that class members consented *ipso facto* during the admissions process – is not an individualized issue defeating predominance, but is itself a question/defense common to the class as a whole.

### 2. Superiority

The focus of superiority analysis is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *See Sacred*

*Heart Health Sys.*, 601 F.3d at 1183-84 (citation omitted); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009).  "[T]he predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims, both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability[.]"  *Sacred Heart Health Sys.*, 601 F.3d at 1184 (internal citations and alterations omitted).  In deciding superiority, the district court must consider at least some of the factors set forth in Rule 23(b)(3), including: "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action."  *See Vega*, 564 F.3d at 1278 n.19 ("a complete failure to address these factors or any other pertinent consideration when conducting a Rule 23(b)(3) inquiry is an abuse of discretion").

As explained above, for both putative classes common questions of law and fact predominate over any individualized issues.  The Court, upon considering the pertinent factors above, also concludes that the class action device is the superior method for adjudicating the class members' claims fairly and efficiently.  Although both the FDCPA and the TCPA have built-in incentives for aggrieved plaintiffs to litigate individually – such as the opportunity to collect statutory damages and attorney's fees[7] – it does not follow that such claims are inappropriate for class treatment.  There is no indication that Congress did not wish for consumers to bring class actions under these statutes.  *See Landsman & Funk PC*, 640 F.3d at 94-95.  While nuisance calls from debt collectors may not be "the most egregious of wrongs policed by Congress," this Court cannot assume "that individual suits [will] deter large commercial entities as effectively as aggregated class actions and that individuals would be as motivated – or even more motivated – to sue in the absence of the class action vehicle."  *See id.* at 95.  There is "little reason to believe that individual actions are automatically efficient; plaintiffs can still face protracted litigation when they sue individually."  *See id.*

---

[7] *See, e.g.*, *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352 (11th Cir. 2009) (FDCPA allows for individual plaintiffs to collect actual damages, statutory damages up to $1,000, costs, and reasonable attorney's fees); *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) (TCPA incentivizes individual litigation by offering statutory damage awards for plaintiffs).

In addition, the Court finds that the "large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating" the plaintiffs' claims under the FDCPA and TCPA. *See Hicks*, 2008 WL 5479111, at *10. Moreover, the Court finds no significant manageability concerns, given that there are no prickly individualized questions with the potential to derail this class action. Finally, as all putative class members are Florida residents, litigating this case in a Florida federal district court makes sense. Taken together, these considerations show that the class action vehicle is superior in this case.

Defendants offer only two reasons why the superiority requirement is not met here, neither of which is persuasive. Defendants first argue that their potential liability to the class members would be "so enormous and completely out of proportion to any harm suffered" that "the individual suit, rather than a single class action, is the superior method of adjudication." *See* Resp. at 21. According to Defendants, the potential damage awards are not only grossly out of proportion, but would also "annihilate" them financially and violate their due process rights.

In *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), *abrogated on other grounds by Bridge v. Phoenix Bond & Indemity Co.*, 553 U.S. 639 (2008), the Eleventh Circuit indicated that courts may need to "assess whether the potential damages available in a class action are grossly disproportionate to the conduct at issue," in deciding superiority:

> Where the defendant's alleged behavior is deliberate or intentional, we have had no problem allowing class actions to proceed. Where defendants are being sued for statutory damages for unintentional acts under a strict liability standard, however, courts take a harder look at whether a defendant deserves to be subject to potentially immense liability. Similar reasoning applies where damages are being sought for technical violations of a "complex regulatory scheme, subject to different reasonable interpretations," In cases where "the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff," we are likely to find that individual suits, rather than a single class action, are the superior method of adjudication.

*Id.* at 1271 (citations omitted).

In this case, Defendants have not made a convincing showing that certification should be denied on such grounds. As an initial matter, damages under the FDCPA are capped in class actions, so that statute should pose no concern. *See* 15 U.S.C.A. § 1692k (a)(2)(B) (providing that class action damages shall not "exceed the lesser of $500,000 or 1 per centum of the net

worth of the debt collector").  And while the TCPA does not similarly limit damage awards, that is not a reason to deny certification here.  Defendants have not identified a single case under the TCPA where a federal court denied certification because the prospect of an unconstitutional damage award loomed large.[8]  Nor have they shown, beyond speculation, that a grossly disproportional award is surely to result if class certification is granted.

Moreover, Defendants' argument, in the context of the TCPA, appears to sit on a faulty premise.  While Defendants may face a potentially larger liability in a class action, it does not follow that any damages awarded would be disproportionate.  The text of the statute makes absolutely plain that, in Congress's judgment, damages of $500 for each violation, or triple that if the violations are willful, are proportionate and appropriate compensation for the consumer.  *See* 47 U.S.C. § 227(b)(3)(B).  "That proportionality does not change as more plaintiffs seek relief; indeed, the size of [a defendant's] potential liability expands at exactly the same rate as the class size."  *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010).  "[T]he Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations."  *See Phillips Randolph Enters., LLC v. Rice Fields*, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007).

Finally, even accepting Defendants' argument that this case could put them out of business, the prospect of an unconstitutionally large award is better addressed at a subsequent stage in the proceedings:

> Many laws that authorize statutory damages also limit the aggregate award to any class. . . . Other laws, however, lack such upper bounds. . . . Maybe suits such as this will lead Congress to amend the [the statute in question]; maybe not.  While a statute remains on the books, however, it must be enforced rather than subverted.  An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified.  Then a judge may evaluate the defendant's overall conduct and control its total exposure.  Reducing recoveries by forcing everyone to litigate independently – so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims – has little to recommend it.

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953-54 (7th Cir. 2006) (citations omitted).

---

[8] The decisions relied upon by Defendants concern certification under the Truth in Lending Act ("TILA") and the Fair and Accurate Credit Transactions Act ("FACTA").  *See* Resp. at 21-24.  The only TCPA case that they cite, *American Home Services, Inc. v. A Fast Sign Co.*, 713 S.E.2d 396, 398 (Ga. Ct. App. 2011), *rev'd by* 734 S.E.2d 31, 33 (Ga. 2012), is a Georgia state court decision that does not address whether certification should denied because the defendant may be slapped with a large damage award.

Based on the present record, the Court finds it would be imprudent, premature, and speculative to deny certification on the mere possibility that damages may be huge. That contingency will be dealt with another day, should it come to pass. *See Bush v. Calloway Consol. Group River City, Inc.*, 2012 WL 1016871, at *14 (M.D. Fla. Mar. 26, 2012); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 2012 WL 3027953, at *5-*6 (W.D. Mich. July 24, 2012); *Murray*, 434 F.3d at 953-54; *Bateman*, 623 F.3d at 723. This Court is well aware of its obligation to continually evaluate the appropriateness of class treatment and to adjust or decertify if the circumstances warrant. *See Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001) ("the district court retains the ability, and perhaps even a duty, to alter or amend a certification decision," as circumstances change); *Prado-Steiman*, 221 F.3d at 1278 (class certification rulings are "fluid" and may be altered or amended); *see also* Fed. R. Civ. P. 23(c) ("An order that grants or denies class certification may be altered or amended before final judgment."). The Court is also prepared to taper any damage award that runs afoul of due process.

Defendants next argue that "the superiority requirement is not met where individual mini-trials must be held on damages," citing a Fourth Circuit decision from three decades ago.[9] *See* Resp. at 21 (citing *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977)). Numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate and that class treatment is superior. *See Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003); *see also Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 815 (7th Cir. 2012) ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)."). The Eleventh Circuit has said that individualized damages issues will seldom upset a case otherwise suited for class treatment:

> It is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification. Of course, there are also extreme cases in which computation of each individual's damages will be so complex, fact-specific, and

---

[9] In truth, the spector of individual damages trials bears more directly on predominance than superiority. *See generally* Newberg on Class Actions § 4:54 (2012) (noting that "[c]ourts in every circuit have . . . uniformly held that the [Rule] 23(b)(3) **predominance** requirement is satisfied despite the need to make individualized damage determinations." (emphasis supplied)). But the result is the same: Defendants' argument fails to show that class treatment is inappropriate under Rule 23(b)(3).

difficult that the burden on the court system would be simply intolerable[,] but we emphasize that such cases rarely, if ever, come along.

*Owner-Operator Ind. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1326 (11th Cir. 2010) (citations omitted); *see also Sacred Heart Health Sys., Inc.*, 601 F.3d at 1178-79. Here, Defendants have not come forward with any particular reason or explanation why damage calculations will be particularly onerous in this case, and given the relatively straightforward statutory schemes in question, the Court fails to see how this would be so.

## Conclusion

For the reasons explained above, the Court rejects Defendants' standing challenges and finds that class certification is appropriate under the FDCPA and the TCPA. As to both putative classes, the four prerequisites of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3), are satisfied. Accordingly, it is hereby **ORDERED and ADJUDGED** that the Plaintiff's Motion for Class Certification [ECF No. 53], is **GRANTED**.

The Court hereby certifies the following class under the FDCPA:

All Florida residents for whom HRRG left a telephone message:

(b)     in substantially the following form:
        [Hello] this is HRRG calling. We look forward to helping you.
        Please return our call at 1-800-984-9115. Thank you.

(b)     in which it failed to disclose that the communication was from a debt collector;

(c)     in an attempt to collect a debt, which was owed to Inphynet, arising from medical care at a Memorial Healthcare System facility, including Memorial Regional Hospital, Memorial Regional Hospital South, Joe DiMaggio Children's Hospital, Memorial Hospital West, Memorial Hospital Miramar and/or Memorial Hospital Pembroke;

(d)     during the one year period prior to the filing of the complaint in this matter through the date of class certification.

The Court also certifies the following class under the TCPA:

All Florida residents to whom HRRG, on behalf of Inphynet, placed any call:

(a)     using an automatic telephone dialing system or an artificial or prerecorded voice to the recipient's cellular telephone;

(b)     where Defendants' records show the person's cellular telephone number was obtained from Inphynet;

    (c)     to collect or attempt to collect a debt allegedly due Inphynet arising from medical care at a Memorial Healthcare System facility, including Memorial Regional Hospital, Memorial Regional Hospital South, Joe DiMaggio Children's Hospital, Memorial Hospital West, Memorial Hospital Miramar and/or Memorial Hospital Pembroke;

    (d)     during the four year period prior to the filing of the complaint through the date of class certification;

Excluded from this class are persons who HRRG's records show gave express consent directly to HRRG to call their cellular telephone number prior to HRRG's placement of its call using an automatic telephone dialing system or a prerecorded voice message.

In addition, having considered the factors enumerated in Rule 23(g), the Court hereby appoints O. Randolph Bragg of Horwitz Horwitz & Associates and Donald A. Yarbrough as class counsel. *By April 12, 2013*, class counsel shall submit to the Court a proposed schedule for providing the class members the requisite notice, as outlined in Rule 23(c)(2).

       **DONE and ORDERED** in chambers, at Miami, Florida on March 26, 2012.

 

**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**