UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-61357 SCOLA/OTAZO-REYES

STEPHEN M. MANNO, on behalf of himself
and all others similarly situated,

        Plaintiffs,                               CLASS ACTION

vs.

HEALTHCARE REVENUE RECOVERY
GROUP, LLC d/b/a ACCOUNT
RESOLUTION SERVICES and INPHYNET
SOUTH BROWARD, INC.,

        Defendants.
_____/

**DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER CERTIFYING
CLASS ACTION AND INCORPORATED MEMORANDUM OF LAW**

      Defendants, HEALTHCARE REVENUE RECOVERY GROUP, LLC ("HRRG") and INPHYNET SOUTH BROWARD, INC. ("Inphynet"), pursuant to this Court's plenary power and Local Rule 7.1, move for reconsideration of this Court's March 26, 2013 Order on Class Certification [DE 181]. As set forth in detail below, reconsideration is appropriate here.

**I.**    **INTRODUCTION**

      This suit arises out of telephone calls purportedly made to plaintiff Manno to collect an unpaid bill for emergency medical treatment provided at a Memorial Healthcare System ("Memorial") hospital. Manno acknowledges he completed the admission paperwork and voluntarily provided his telephone number during the admissions process. While Manno received emergency treatment from an attending physician of Inphynet, which has an agency relationship with Memorial, he did not pay for those services at the time resulting in collection efforts. At issue are calls made to telephone numbers HRRG understood were residential numbers provided by Manno and the class members in the emergency room admissions process, where those numbers later turned out to be cellular number. Also at issue are a limited number of messages left for two days prior to the June 17, 2010 disputed message left for Manno.

      On March 26, 2013, this Court certified two classes in this action, one under the Fair Debt Collection Practices Act ("FDCPA") and one under the Telephone Consumer Protection

Act ("TCPA") [DE 181].  The day after this Court certified the two classes, the United States Supreme Court issued its opinion in *Comcast Corp. v. Caroline Behrend*, No. 11-864, 2013 WL 1222646 (Mar. 27, 2013), reiterating that courts should not certify a class seeking monetary damages absent a "rigorous analysis" of the merits of a plaintiff's claim.  Defendants seek reconsideration of the March 26 Order granting class certification and denial of certification as to both classes[DE 181].

**II.   STANDARD FOR RECONSIDERATION**

This Court has the inherent power to reconsider, revise or alter its interlocutory March 26 Order on Class Certification. *Parker v. Schmiede Machine & Tool Corp.*, 445 Fed. App'x 231, 233 n.3 (11th Cir. 2011); *Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995)).  While it is discretionary, this Court has recently explained that reconsideration is proper "where 'the Court has patently misunderstood a party, where there is an intervening change in controlling law or the facts of a case, or where there is manifest injustice." *Regions Bank v. Commonwealth Land Title Ins. Co.*, No. 11-23257, 2012 WL 6553966, at *1 (S.D. Fla. Dec. 14 2012).  Defendants submit that the recent Supreme Court *Comcast* decision sets forth the correct analysis for determination of whether a class should be certified and that analysis was not applied here.  Defendants further submit that this Court misunderstood the factual underpinnings and questions that need to be addressed prior to any certification.  Finally, Defendants believe that certification of the classes absent a proper merits inquiry results in manifest injustice.  As such, reconsideration should be granted and class certification should be denied.

**III.   THE SUPREME COURT'S MARCH 27, 2013 OPINION REAFFIRMED THAT COURTS SHOULD NOT CERTIFY CLASSES SEEKING MONETARY DAMAGES ABSENT A RIGOROUS ANALYSIS THAT INCLUDES A MERITS INQUIRY OF THE VIABILITY OF PLAINTIFF'S CLAIMS**

On March 27, 2013, the United States Supreme Court issued its opinion in *Comcast*, 2013 WL 1222646.  At issue there was the Third Circuit's affirmance of an order certifying a class of more than 2 million people alleging federal antitrust violations. *Id.* at *1.  The Court first recognized that certification under Federal Rule of Civil Procedure 23(b)(3) is proper "only if 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Id.* at *3.  Thus, the plaintiff must show (1) individual injury through evidence common to the class as opposed to evidence specific to each

individual class member, and (2) resulting damages that can be measured "'on a class-wide basis' through use of a 'common methodology.'" *Id.* at *3 (quoting district court decision).

After going through the history of the litigation, the Court recognized that class actions are the exception, not the rule. *Id.* at *4. Thus, a party seeking class certification "'must affirmatively demonstrate his compliance' with Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)). To meet this burden, the movant must affirmatively ***factually*** establish numerosity, common questions of law or fact, typicality, and adequacy of representation. *Id.* Further, the movant must proffer evidence to show the existence of at least one of Rule 23(b)'s provisions. *Id.* The Court reaffirmed its prior holdings that a "rigorous analysis" of the facts is necessary prior to class certification. *Id.* The Court went on to explain that the same analysis under Rule 23(a) applies to certification of a class under Rule 23(b). *Id.* The Court continued: "Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.' That is so because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.* (internal citations omitted).

The Court went on to hold that the predominance requirement under Rule 23(b)(3) "is even more demanding that Rule 23(a)." *Id.* Thus, procedural safeguards, including the "court's duty to take a 'close look' at whether common questions predominate over individual ones" are necessary. *Id.* (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231 (1997)). The Court then reversed class certification, reasoning: "By refusing to entertain arguments against respondents' damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination, the Court of Appeals ran afoul of our precedents requiring precisely that inquiry." *Id.* at *5.

In contrast, in its March 26 Order, this Court relied on *Amgen, Inc. v. Connecticut Retirement & Trust Funds*, ___ U.S. ____, 133 S. Ct. 1184 (2013), for its conclusion that only a limited merits inquiry is proper at the certification stage. *See* Order On Class Certification at 3. While the *Amgen* opinion did restrict merits inquiry in the class certification setting, a full reading of the opinion shows it is limited to its specific facts, i.e., certification of a class in a fraud on the market securities suit. *Id.* at 1191-92. That limitation is clear from the *Amgen* opinion. First, it expressly identifies it is considering the "interaction between federal securities-fraud laws and Rule 23's requirements for class certification." *Id.* at 1191. Second, the Court

3

unequivocally recognized and reaffirmed the general rule for certification of a class seeking money damages, namely that the "plaintiff must satisfy Rule 23(a)'s above-mentioned prerequisites of numerosity, commonality, typicality, and adequacy of representation [citation omitted], and must also establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* In contrast, a "fraud on the market" claim includes a "rebuttable presumption of reliance on material misrepresentations aired to the general public." *Id.* at 1192. It is this peculiarity in a fraud on the market securities action that sets it apart, and thus requires a slightly different analysis when considering a motion for class certification. The rebuttable presumption of reliance in the fraud on the market securities cases allows the court to avoid a merits inquiry regarding an assessment of materiality.

The fact that the *Comcast* Court made absolutely no mention of the *Amgen* opinion offers further evidence that *Amgen* is not appropriate here. As the *Comcast* opinion made clear, prior to certifying a class seeking monetary damages, "rigorous analysis" must be conducted by reviewing proffered evidence and by analyzing the viability of the claims at issue. The *Comcast* opinion reaffirmed that the analysis set forth in *Dukes* governs here. Applying the correct analysis, the Court must determine the viability of plaintiff's and the classes claims through a merits inquiry. As in *Comcast*, the facts here also demonstrate: "Questions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* at *5. Thus, this Court should reconsider and deny Plaintiff's motion for class certification.

IV. **THIS COURT SHOULD RECONSIDER WHETHER THE TCPA CLAIM IS VIABLE AS A NECESSARY PREREQUISITE TO CLASS CERTIFICATION**

This Court certified a TCPA class defined to include all Florida residents to whom HRRG, on behalf of Inphynet, made a call to a cellular telephone number obtained from Inphynet. *See* Order at 22-23. Excluded from the class are those persons who HRRG's records show gave express consent. *Id.* at 23. To determine whether the class is proper, this Court is required to first ascertain whether Plaintiff's claim could properly be maintained and then, whether the class TCPA claims could be maintained. Absent a finding that Mr. Manno can satisfy each element of a TCPA claim, the class is improper.

A TCPA claim is viable if, and only if, plaintiff can show all of the following: (1) calls were made to a cell phone, (2) using an automatic telephone dialing service ("ATDS") and/or an artificial or prerecorded voice, and (3) such calls were made *without the called party's prior express consent.* 47 U.S.C. § 227(b)(1)(A)(iii). As this Court noted, "typicality is often met when, in proving her case, the representative plaintiff establishes the elements needed to prove the class members' case." *See* Order at 12 (citing *Colomar v. Mercy Hosp., Inc.,* 242 F.R.D. 671, 677 (S.D. Fla. 2007)). Thus, in order for a plaintiff to prevail on the TCPA claim, lack of consent must be established. Despite this requirement under the statutory framework and this Court's express recognition that "consent is a defense to a TCPA claim," this Court certified the TCPA class without conducting the necessary "rigorous analysis" of whether lack of consent has been established. *See* Order at 11.

Furthermore, the alleged TCPA theory stems from Plaintiff and the class member's voluntary provision of cellular telephone numbers during the hospital emergency room admission process in connection with emergency treatment Inphynet rendered to Plaintiff and the other class members.[1] In the March 26 Order certifying the class, this Court failed to consider the record evidence showing, for the time period of 2007 through 2012, the hospital admissions procedure for each new patient included providing the patients specific forms going directly to the issue of consent. *See* Declaration of Laura Torres [DE 145-1 at. 3]; Declaration of Stuart Hopen [DE 145-2 at 2-3]. During that same time period, MHS also posted its privacy notice on its website *See* [DE 145-2 at 2] and [DE 145-1 at 4]. As part of and contemporaneous with the emergency room admissions process, a patient is required to sign the Agreement and Release Form. *Id*. At the same time, each new patient receives the MHS Privacy Notice and is required to sign the Acknowledgement of Receipt of Privacy Notice Form during the same admissions process. *Id*.

Moreover, the Federal Emergency Medical Treatment and Labor Act provides in relevant part that, "[a] participating hospital may not delay provision of an appropriate medical screening examination required under subsection (a) of this section or further medical examination and treatment required under subsection (b) of this section in order to inquire about the individual's method of payment or insurance status." 42 U.S.C. §1395DD(h). When a patient comes to a

---

[1] The accounts at issue related only to emergency care and treatment provided by Inphynet at Memorial hospitals.

5

hospital emergency room seeking treatment, the very nature of the need and the services being provided make it unreasonable to require separate intakes of telephone numbers and other demographic information necessary for contacting the patient debtor. Thus, the hospital's agents, who are providing such emergent care, simply cannot be expected to stop or withhold treatment each step of the way for a new consent or intake form to be completed. In fact, to do so would violate the federal law cited above. Here, Plaintiff and the class members each provided telephone numbers and gave consent during the emergency room intake process. Yet the Court appears to have not considered these essential facts in certifying the TCPA class.

This Court further failed to consider whether Plaintiff has a viable TCPA claim based upon Plaintiff's argument that the Health Insurance Portability and Accountability Act ("HIPAA") prohibits the healthcare provider from releasing the phone number to a debt collector, and therefore, although Plaintiff may have given "his number" to the hospital, he did not provide it to Inphynet, the emergency room physicians who treated Plaintiff. As argued in more detail in HRRG's Renewed Motion for Final Summary Judgment, HIPAA clearly contemplates that information provided, even if it is Protected Health Information ("PHI"), still may be used for purposes of treatment, *payment*, and health care operations. [DE 143 at 10-11]. This Court did not consider that HIPAA's implementing regulations allow a covered entity to use and disclose health information without patient consent for "treatment, payment, and health care operations". *Citizens for Health v. Leavitt*, 428 F.3d 167, 172 (3d Cir. 2005) (citing 45 C.F.R. §§ 164.506; 164.508(a)); *Mitchem v Illinois Coll'n Serv., Inc.*, 2012 WL 170968 (N.D. Ill. Jan. 20, 2012). As the court in *Mitchem* observed, HIPAA does not require a medical provider to obtain either express or implied consent from a consumer to use a cell phone number he provided to obtain payment for its services. 2012 WL 170968 at *2 (citing 45 C.F.R. § 164.506(a), (c)(1)).

Thus, the fact that HIPAA does not preclude the transmittal of the telephone number to be used for collection of payment must be considered by this Court to determine whether Plaintiff and the class members' TCPA claims are viable. The record evidence shows that Plaintiff Manno provided the number called in connection with his admission for the treatment he received directly from Inphynet, and his related failure to pay his bill. The number was not identified as a cell number, but rather a home number in the admissions data supplied to HRRG. Manno was advised the information he provided would be used for payment purposes as well as treatment and care. Thus, Inphynet, and the entities collecting payment on its behalf, had the

6

right to call the telephone numbers provided by Manno and the class members for payment of the outstanding medical bills.

With respect to Mr. Manno, Memorial's records indicate he signed the Agreement and Release Form, and further the disclosures he received expressly identify that the information would be released for payment purposes. [DE 145-1 at 4]. It is also undisputed that the Inphynet physicians treated him as a patient in the hospital's emergency room, and the hospital admissions process was the only appropriate place to gather his information, including name, address and telephone number. Additionally, the only evidence is that an agency relationship exists between Inphynet and the Memorial hospital. *See* Deposition of Thomas Pobgee at p. 26 [DE 145-3]; *see also* Torres Declaration at 5.

Further, the March 26 Order seems to have failed to consider FCC opinions regarding express consent. For example, in 2008, the FCC opined as what constitutes "express consent" under the TCPA as a matter of law explaining, "a consumer's provision of his cell phone number to a creditor . . . reasonably evidences [his] prior express consent to [being] contacted at that number" about the debt "absent instructions to the contrary." *In re Rules and Regulations Implementing the Tele. Consumer Protection Act of 1991*, 23 FCC Rcd. 559 (2008). In that same opinion, the FCC looked to the legislative history of the TCPA to reach its conclusion. *Id.* at 564. The FCC noted the House Report on the bill that became § 227 states that "[t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications." 2008 TCPA Order , No. 07-232 at ¶9 (citing to House Report, 102-317, 1st Sess., 102nd Cong. (1991) at 17).

Furthermore, the FCC's original rulemaking under the TCPA found that a person who voluntarily releases his phone number to another gives consent to be contacted at the number:

> persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.

*In re Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769, 31 (1992). FCC final orders are binding on this Court under the Hobbs Act and this Court does not have the jurisdiction to review FCC rulings under the TCPA. *See* 28

U.S.C. §2342(1); 47 U.S.C. §402(a); *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446-50 (7th Cir. 2010); *Hicks v Client Services, Inc.*, 2009 WL 2365637 at *4-5 (S.D. Fla. 2009); *U.S. West Communs., Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir.2000); *Leckler v. Cashcall*, Inc., 2008 WL 5000528 at *2–3 (N.D. Cal. 2008).

      The FCC ruling explains in no uncertain terms that by providing the telephone number to the creditor, Plaintiff provided consent allowing calls to be made on behalf of Inphynet to the number provided. The FCC ruling is unqualified in its scope. The FCC has found "that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party, [and] we clarify that such calls are permissible." *In the Matter of Rules & Reg'ns Implementing the Tele. Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 9, 10. The FCC further explained that "calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party . . . . *Id.* at 568, 17. For purposes of this motion, it is undisputed that Manno and the class members incurred their debts while Inphynet performed emergency room services for them, debts which were not timely paid, resulting in the calls made by HRRG to what HRRG understood to be home phone numbers the class members themselves provided, during the emergency room admissions process, with notice that those numbers would be used to collect for services rendered.

      It is well-established that provision of one's telephone number equates to consent under the TCPA. *See Jordan v. ER Sol'ns, Inc.,* 2012 WL 5245384 (S.D. Fla. Oct. 18, 2012) (consumer gave express consent to automated calls from debt collector based upon terms and conditions of purchase which included agreement to use any information provided by consumer for purposes of debt collection); *Johnson v. Credit Prot. Ass'n, L.P.*, 2012 WL 5875605 (S.D. Fla. Nov. 20, 2012) (consent given under TCPA where consumer provided his cellular telephone number at the time he set up his service with cable company); *Starkey v. Firstsource Advantage, LLC*, 2010 WL 2541756, *3 (W.D.N.Y. 2010); *Greene v. DirecTV, Inc*., 2010 WL 4628734, *3 (N.D. Ill. 2010) (plaintiff had consented to be contacted by potential creditors on her cell phone number when she voluntarily released her number to potential creditors through the fraud alert message she placed in her credit reports); *Cunningham v. Credit Mgmt., L.P.*, 2010 WL 3791104, *5 (N.D. Tex. 2010) (holding that by providing number to Time Warner cable company, the

plaintiff consented to receiving calls on that phone number, and entering judgment on TCPA claim); *Cavero v. Franklin Collection Serv.*, 2012 WL 279448, at *3-4 (S.D. Fla. Jan. 31 2012) (where plaintiff did not dispute that he provided creditor with his cell phone number, the court found no genuine dispute that plaintiff provided consent under the TCPA). Therefore, to establish that Manno and class members have viable TCPA claims, each must show that he/she did not consent to the alleged calls. This Court, however, failed to make any determination of whether provision of a cellular number during the emergency room admissions process constitutes consent under the TCPA. Reconsideration is thus appropriate under *Comcast* (and thus *Dukes*) to determine initially whether Manno and the alleged class members can meet the statutory elements of a TCPA claim. Defendants submit Manno has not proffered sufficient evidence to meet that threshold, making certification improper.

V. **WHETHER PLAINTIFF AND CLASS MEMBERS DID NOT CONSENT TO HRRG'S CALLS AND THE VIABILITY OF THE CLAIMS CANNOT BE DECIDED ABSENT A CASE-BY-CASE ANALYSIS**

As previously stated, in order for the Plaintiff and the class to have viable TCPA claims, lack of consent must ultimately be established. This Court certified the TCPA class without conducting the "rigorous analysis" of whether lack of consent can be established. The evidence here supports a finding that the question of consent can only be resolved by an individualized inquiry of each and every class members' HRRG account records, as well as records of Inphynet's billing entity HCFS Healthcare Financial Services, Inc. ("HCFS"), Inphynet and the Memorial hospitals. As Mr. Friedlander testified, Plaintiff and other class members may have very well telephoned one of those entities after receiving the initial invoice and may have given consent at that time, prior to HRRG ever being referred the account. *See* David Friedlander June 14, 2012 Deposition at 14-22 [DE 58-1]; Sept. 18, 2012 Friedlander Deposition at 24-27 [DE 101-1]; Oct. 1, 2012 discovery dispute letter at p. 4 [DE 120]. There is simply no way around the individualized inquiry – a case-by-case analysis is the only way to ascertain whether a cell phone number was involved and whether the debtor consented to be called.

Once that analysis is completed, *Comcast* directs this Court to also consider questions of individual damage calculations. Those inquiries will depend on how many alleged violative calls were made to every class member. In contrast, this Court apparently determined that it would not have to inquire into each individual's account records to find consent because of the fact that the class discovery was limited to those accounts where HRRG's records showed no

9

communication between the called party and HRRG prior to the first call. The class discovery order by the Magistrate Judge, however, only goes to the Plaintiff's numerosity theory. Further, the class discovery solely goes to numerosity of a first outbound call. Thus, it does not address the issue of an individualized inquiry of class damages because on many of HRRG's accounts there are instances where at some point HRRG interacted with some patients or their guarantors and obtained consent to call a telephone number that was provided at some point throughout the various stages of the handling of the account. Thus, determining the number of calls that HRRG placed for every class member who did not provide consent to be called on their numbers they provided will inevitably overwhelm questions common to the class. Again, the only way to determine this is by looking at each individual class member's records and reviewing what occurred throughout the handling of the account.

In its Order, this Court held that it "will not have to inquire as to whether each putative class member may be subject to an independent consent defense" because the class definition weeds out those individuals who may have consented to be called. *See* Order at 11. That conclusion ignores that consent to be called can be provided in different manners, and at different time during the handling of the account. For instance, the hospital admissions procedure for each new patient included providing the patient with disclosure forms that clearly identify that the information would be released for payment purposes. *See* Torres Declaration at 3-4 [DE 145-1]; Hopen Declaration at 2 [DE 145-2]. *Comcast* instructs that this evidence must be fully analyzed, including consideration and determination of whether consent could have been given by the patient or guarantor when he or she provided a telephone number during the emergency room admissions process or at some other time prior to each individual call made to each individual class member, not just the first call. Reconsideration is thus proper to determine if this can be done without a case-by-case analysis. Defendants submit it cannot and, applying *Comcast* (and thus *Dukes*), class certification is improper.

VI. **THIS COURT CANNOT DECIDE WHETHER PLAINTIFF AND CLASS MEMBERS ARE ENTITLED TO KNOWING AND WILLFUL DAMAGES WITHOUT A CASE-BY-CASE ANALYSIS AND THUS COMMONALITY, TYPICALITY AND PREDOMINANCE ARE NOT PRESENT**

On behalf of himself and the class members, Plaintiff seeks to impose additional damages, up to $1,000 for each and every violation, related to any knowing or willful violations. *See, e.g.* Second Amended Complaint, ¶ 49 [DE 28]. Yet the certification Order does not address the individualized inquiry that will be necessary to determine whether each individual

call was willful or knowing. As discussed above, in conducting a rigorous analysis related to class certification, the Court must consider the requisite individualized inquiry as to each and every class member's claims. That means that this Court will be required to address on an individualized basis the various circumstances that may lead to the imposition of a "knowing and/or willful award" on a per call basis, as the circumstances on any individual class member's account may have evolved (or not) at various points in time throughout the handling of the account. Such means that Plaintiff cannot establish commonality, typicality or predominance.

As an example of the individualized inquiry that is expected to become necessary of any TCPA claim, one need look no further than a case tried before Judge Jordan involving Plaintiff's counsel Mr. Yarbrough. *See Fillichio, et al v MRS Assoc., Inc.*, Case. No. 09-61629-Civ-Jordan (S.D. Fla.). In *Fillichio,* a bench trial was conducted regarding the issue of whether damages should be assessed for knowing or willful violations as to calls made to the plaintiff. The court held that the determination of what the individual plaintiff was aware of and issues regarding the interaction between the debt collector caller and the called party, including anything to do with mitigation of damages, were relevant to the Court's determination of awarding willful or knowing damages under the TCPA. *See* September 25, 2010 Trial Transcript, including discussion at 100-103, *Fillichio,* Case. No. 09-61629-Civ-Jordan [DE 72], and October 27, 2010 Findings of Fact and Conclusions of Law on Additional Damages [DE 70] (incorporating findings of facts and conclusions of law announced in hearing transcript) (attached as Composite Exhibit 1). Similarly here, even under Plaintiff's theory (which Defendants dispute is viable), Plaintiff's willful and knowing claim, made on behalf of himself and the class, will require an individualized inquiry and determination as to the interation between each and every class member and HRRG related to "each and every violation" as alleged in Paragraph 49 of the Second Amended Complaint. Such will result in the inevitable "mini-trials" for each and every class member that precludes class certification. Accordingly, reconsideration should be granted and class certification should be denied.

**VII.    THIS COURT MUST DECIDE WHETHER PLAINTIFF AND THE CLASS HAVE VIABLE TCPA CLAIMS AGAINST INPHYNET**

This Court's Order certifying the TCPA class purportedly includes the creditor, Inphynet. It made no distinction between the two Defendants as it pertains to the class. *See* Order at p. 22-23. Again, under the standard reiterated in *Comcast*, this Court needs to determine, through a

11

merits inquiry, whether Plaintiff and the class have a viable TCPA claim against Inphynet where Plaintiff's theory is one of vicarious liability. Again, no such analysis or determination was made in the March 26 Order.

In Inphynet's Renewed Motion for Summary Judgment, which remains pending before this Court, Inphynet argues that in order to be found liable for the conduct of HRRG, Plaintiff must prove an agency relationship between the two parties. *See* [DE 144]; *Thomas v. Taco Bell Corp.*, SACV 09-01097-CJC, 2012 WL 3047351 (C.D. Cal. June 25, 2012) (citing *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir.2010)); *see also Mey v. Pinnacle Security, LLC*, 2012 WL 4009718 (N.D.W. Va. Sept. 12, 2012) (citing to *Thomas*). In the Eleventh Circuit, an agency relationship requires: "(1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent." *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1323 (S.D. Fla. 2010) (citing *Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir.2003)); *see also MeterLogic, Inc. v. Copier Sol'ns, Inc.*, 126 F.Supp.2d 1346, 1354 (S.D.Fla.2000). In *Thomas*, plaintiff sought to hold Taco Bell vicariously liable under the TCPA for the actions of its agents who sent text messages to plaintiff about Taco Bell's products. 2012 WL 3047351 at *4. The court concluded that "[a]bsent a clear expression of Congressional intent to apply another standard, [it] must presume that Congress intended to apply the traditional standards of vicarious liability with which it is presumed to be familiar, including the alter ego and agency doctrines." *Id*. Accordingly, the court reasoned that to succeed on a vicarious liability theory, plaintiff must demonstrate that Taco Bell controlled or had the right to control the entities actions and, more specifically, the manner and means of the text message campaign they conducted. *Id*. at *6. (citing *Bonds*, 608 F.3d at 506) (granting summary judgment to Taco Bell as plaintiff failed to meet burden on summary judgment).

Similarly, the District Court in *Mey* also recently interpreted alleged "on behalf of" liability under the private right of action in section 227(b)(3) for alleged violations of section 227(b)(1)(A)(iii), and rejected similar claims as asserted here against Inphynet, and in *Thomas* against Taco Bell. 2012 WL 4009718. The Court noted that strict "on behalf of" liability was not provided for in the private right of action under section 227(b)(3). *Id.* at *4. The Court also held that there was no evidence of the requisite control necessary to impose vicarious "on behalf of" liability, and granted defendant Pinnacle's motion for summary judgment. In doing so, the

Court also rejected the concept that any deference should be given to the FCC's interpretation of "creditor liability" for calls made "on behalf of" creditors. *Id.* at 3-4 (Citing to and applying *Chevron U.S.A. Inc. v. Nat'l Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984)). This Court should apply the same reasoning here, and determine that Inphynet cannot be held liable because the only evidence is that Inphynet did not make the calls at issue, HRRG was an independent contractor, and Inphynet did not control the manner or means by which HRRG placed debt collection calls.

In its Order, this Court did not address the record evidence showing the relationship between Inphynet and HRRG was, at best, that of an independent contractor, and that Inphynet at no time controlled the actions of HRRG. The debt at issue relates to medical treatment Manno received from Inphynet emergency room physician, who are undisputed agents of the hospital. *See* Pobgee Deposition at 26; Torres Declaration at 5. Amounts due to Inphynet as a result of those services rendered were initially billed by HCFS, who later referred any unpaid accounts to HRRG for collection. *See* Friedlander June 14, 2012 Deposition at 14-22. There is no record evidence showing that Inphynet controlled the manner or means in which HRRG collected amounts owed to Inphynet. On the contrary, the evidence only shows that accounts owed to Inphynet were billed and collected by HCFS, and if an account remained outstanding, HRRG would then collect the amount owed without any direction or control by Inphynet. *Id.* Instead, HRRG dealt solely with HCFS. *Id.*

Citing *Amgen*, this Court decided it did not need to consider the merits of Plaintiff's and the class' TCPA claims against Inphynet. However, *Comcast* again instructs that a court cannot refuse to entertain arguments against issues "that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination." 2013 WL 1222646 at *6-7. As such, this Court should reconsider its ruling in light of *Comcast* and findings by other District Courts that a creditor is not vicariously liable under the TCPA for calls placed by its independent contractor to collect amounts owed to that creditor. *See Balthazor v. Central Credit Servs., Inc., et al.*, Case No. 10-62435-CIV-COHN/SELTZER, slip op. (S.D. Fla. October 19, 2011) (DE 110, 116); *Thomas*, 2012 WL 3047351 at *4. If there is no viable claim against Inphynet as the creditor, then there can be no class as to Inphynet. Therefore, this Court must decide whether Plaintiff and the class have viable claims against Inphynet, as the creditor

13

on behalf of which HRRG made calls, as part of its "rigorous analysis" required under *Comcast*. Reconsideration is proper. and certification should be denied.

### VIII. HRRG'S FDCPA BONA FIDE ERROR DEFENSE AGAINST PLAINTIFF MANNO DEFEATS ADEQUACY, COMMONALITY AND TYPICALITY REQUIREMENTS UNDER RULE 23

Applying the analysis reiterated in *Comcast* and *Dukes*, Plaintiff Manno cannot satisfy the requirements of adequacy, commonality and typicality for the FDCPA class since his claim is subject to Defendant's *bona fide* error defense. As previously identified, one of the crucial questions which will not provide a common answer is which class members' claims are subject to a *bona fide* error defense. *See* Response to Motion for Class Certification at 11 [DE 80]; *see also* HRRG's Renewed Motion for Final Summary Judgment at 17 [DE 143] (arguing that Plaintiff's 1692e(11) claim fails due to *bona fide* error defense). Existence of this defense as to Plaintiff is fatal to certification of a FDCPA class.

As *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982) observed, the commonality and typicality requirements tend to merge with the adequacy–of–representation requirement. "The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *CE Design Ltd. v. King Architectural Metals, Inc*., 637 F.3d 721, 726 (7th Cir. 2011). The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer." *J.H. Cohn & Co. v. American Appraisal Assocs., Inc*., 628 F.2d 994, 999 (7th Cir. 1980) (citation omitted). A named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative. *See, e.g., Koos v. First Nat'l Bank of Peoria,* 496 F.2d at 1164–65 (7th Cir. 1974); *Schleicher v. Wendt*, 2009 WL 761157, at *3 (S.D. Ind. March 20, 2009), affirmed on other grounds, 618 F.3d 679 (7th Cir. 2010).

The FDCPA provides that a debt collector cannot be held liable for any violation of the statute, "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *See* 15 U.S.C. § 1692k(c). A debt collector asserting the *bona fide* error defense must show that its violation of the FDCPA: "(1) was not intentional; (2) was a *bona fide* error; and (3) occurred despite the maintenance of procedures

reasonably adapted to avoid any such error." *Edwards v. Niagara Credit Sol'ns, Inc.*, 584 F.3d 1350, 1352 (11th Cir.2009). Section 1692k(c) "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 539 (7th Cir.2005). To establish the *bona fide* error defense, a debt collector need only show that the FDCPA violation was unintentional, not that its actions were unintentional. *Id*. at 537; *Rhinehart v. The CBE Group, Inc.*, 714 F.Supp.2d 1183, 1185 (M.D. Fla. May 27, 2010). To defeat adequacy of the class representative, this defense does not need to be a sure bet, it simply needs to be "arguable." *King Architectural Metals, Inc.*, 637 F.3d at 726. Because Plaintiff Manno's claim is subject to Defendants' well-supported *bona fide* error defense, Manno cannot be an adequate representative of the class.

Here, Manno's FDCPA claim consists of only one message left on June 17, 2010 that allegedly violated §1692e(11). However, on June 17, 2010 at 12:01 a.m., HRRG changed its procedures to use a prerecorded message which disclosed HRRG'S identity and that the message was from a debt collector for the purposes of collecting a debt. *See* June 14, 2012 Deposition of David Friedlander at 53-54, 77-79 [DE 58]. Thus the record evidence shows the standard message HRRG used on June 17, 2010 contained the required disclosure. As such, HRRG disputes the authenticity and substance of the June 17, 2010 message Manno allegedly received as it differs from the standard message in use at that time. *Id*. The evidence shows that Defendant did not intend to violate §1692e(11) by leaving a message on June 17, 2010 that did not state it was from a debt collector. The evidence further shows that Defendant had implemented procedures in place to avoid such a violation. Thus, the evidence strongly supports a *bona fide* error defense to Plaintiff Manno's §1692e(11) claim. Manno would have to devote substantial time defending against the *bona fide* error defense, and this defense will not apply to a substantial amount of the class members who received messages prior to June 17, 2010. Thus, the adequacy prong under Rule 23 is not met.

For instance, in *King Architectural Metals, Inc.*, the Seventh Circuit found that the class plaintiff in a TCPA class action could not be an adequate representative of the class of unconsenting recipients of defendant's faxes if it is subject to a defense that couldn't be sustained against other class members. 637 F.3d at 725; (citing *Koos*, 496 F.2d at 1164–65). The court also found that the class representative could not be adequate if not credible on the key question of whether it invited or permitted the faxed advertisements about which it complains, because if

14831491  0927664

so, plaintiff's claim would fail. *Id.* at 725. The court noted the only question it could consider is whether, however meritorious the suit itself may be, the claim of the class representative may be subject to a defense that makes it an inappropriate representative of the class because other class members may not be subject to the same defense, or perhaps to any defense. *Id.*

In an earlier decision, the Third Circuit vacated the class certification order and remanded ordering the district court to delve into the aspects of whether the class representative has a viable claim. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599-600 (3d Cir. 2009). The class plaintiff was a participant in an ERISA savings plan sponsored by her former employer and brought a putative class action against the employer. *Id.* The class representative signed a separation agreement that included a general release and a covenant not to sue. As a result, the Third Circuit found that she may be subject to unique defenses that could become a focus of the litigation, rendering her atypical and making class certification inappropriate. *Id.* at 599-00. The court noted, for example, that "even if a release does not bar an individual from bringing an ERISA § 502(a)(2) claim on behalf of a plan, it could be argued that the covenant not to sue bars [plaintiff] from filing a lawsuit and serving as a lead plaintiff in an action against [defendant]." *Id.* at 599-00. The court recognized that plaintiff's interests and incentives may not be sufficiently aligned with those of the class and plaintiff may possibly not have a monetary stake in the outcome – all because of the release and covenant not to sue. *Id.*

Manno's FDCPA claim exhibits the same infirmity as the record evidence supports a *bona fide* error defense solely against his FDCPA claim. Because the June 17 message is the only message that could support Manno's 1692e(11) claim, Manno will lack standing if HRRG prevails on this issue against him. This differentiates him from all the other FDCPA class members who may have received messages prior to June 17, 2010. This distinction defeats the commonality, typicality and adequacy requirements of Rule 23. Again, applying the necessary merits, Manno cannot meet the requirements to support an FDCPA class.

## IX. CONCLUSION

As set forth above, the Supreme Court's *Comcast* opinion and application of the necessary "rigorous analysis," including a merits inquiry of the elements of each of Plaintiff's claims and each pre-requisite for a class action establish that reconsideration of the March 26 Order and denial of class certification is appropriate here.

Case No. 11-CV-61357

## Local Rule 7.1(3) Certification of Good Faith Conference

Pursuant to Local Rule 7.1(3), counsel for Defendants certify that they conferred via telephone with counsel for Plaintiff in a good faith effort to resolve the issues raised in this motion but were unable to do so.

*s/David P. Hartnett*
David P. Hartnett
Florida Bar No. 0946631
Barbara Fernandez
Florida Bar No. 0493767
Hinshaw & Culbertson LLP
2525 Ponce de Leon Boulevard
Suite 400
Miami, Florida 33134-6044
Tel. No. 305-358-7747
 Fax No.  305-577-1063
Attorneys for Defendants

14831491  0927664

Case No. 11-CV-61357

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 9, 2013, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF. I also certify that the foregoing document is being served this day, in the manner specified above, on all counsel of record identified below.

DONALD A. YARBROUGH, ESQ.
Post Office Box 11842
Ft. Lauderdale, FL  33339
Phone:  954 537-2000
Fax:  954 566-2235
don@donyarbrough.com

O. Randolph Bragg, Esq.
Horwitz, Horwitz & Associates
25 E. Washington Street
Suite 900
Chicago, IL  60602
Tel:  312-372-8822
Fax: 312-372-1673
rand@horwitzlaw.com

                                          *s/David P. Hartnett*
                                          David P. Hartnett